**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Alicia Maxie, | ) | Civil Action No. 2:20-0806-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Brown & Brown, Inc., and | ) | |
| Brown & Brown of South Carolina, Inc., | ) | **ORDER AND OPINION** |
| | ) | |
| Defendants. | ) | |

The matter before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 30) recommending the Court grant Defendants' motion for summary judgment (Dkt. No. 21) and dismiss Plaintiff, Alicia Maxie's complaint. For the reasons stated below, the Court adopts the R & R as the Order of the Court to grant Defendants' motion for summary judgment and dismiss Plaintiff's complaint.

**I.   Background**

Plaintiff brings one sex discrimination claim in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") against Defendants. (Dkt. No. 1-1). Plaintiff alleges Defendants discriminated against her because of her sex/gender on a continuous basis since September 2017 up until the filing of the Complaint on January 7, 2020. (*Id.* at ¶ 24). The case was removed to this Court on February 21, 2021. (Dkt. No. 1).

Plaintiff was employed by Defendant Brown & Brown of South Carolina ("BBSC"). Plaintiff alleges her former supervisor Todd Tyler ("Tyler") discriminated against her in the terms and conditions of her employment and in her wages by awarding Book of Business ("BOB") only

1

to male employees. (*Id*. at ¶ 29). Plaintiff alleges that Tyler awarded all BOBs from outgoing Commercial Producers between September 2017 and November 2019 to male Commercial Producers and not to Plaintiff because she is a female. (*Id.* at ¶ 7). On December 14, 2019, Plaintiff filed a Charge of Discrimination. (Dkt. No. 21-2 at 147). On January 7, 2020, Plaintiff resigned from her job with Defendant BBSC. (*Id*. at 152).

Defendants filed a motion for summary judgment on April 28, 2021. (Dkt. No. 21). Plaintiff filed a response in opposition (Dkt. No. 22) and Defendants filed a reply. (Dkt. No. 25). On January 24, 2022, the Magistrate Judge issued an R & R recommending the Court grant Defendant's motion for summary judgment. (Dkt. No. 30). On February 7, 2022, Plaintiff filed objections to the R & R. (Dkt. No. 31). On February 22, 2022, Defendants filed a response in opposition to Plaintiff's objections to the R & R. (Dkt. No. 32). The matter is ripe for the Court's review.

## II. Legal Standard

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). In the absence of any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Plaintiff has filed objections, and the R & R is reviewed *de novo*.

### III.  Discussion

Upon a careful review of the record, the parties' respective briefing, and objections to the R & R, the Court finds the Magistrate Judge comprehensively analyzed the issues to determine

3

that Plaintiff fails to prove a *prima facie* case of sex discrimination because she does not set forth sufficient evidence to demonstrate she was treated differently from similarly situated employees outside her protected class.

When a Plaintiff lacks direct evidence of discrimination, she must satisfy the three-step burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to prevail under a discrimination claim. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)). Under *McDonnell Douglas*, a Plaintiff must first establish a *prima facie* case of discrimination. A plaintiff may show a *prima face* case of sex discrimination by showing: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably. *Gerner v. Cty. of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). If a Plaintiff can establish a *prima facie* case of discrimination, the burden shifts to Defendant to show "a legitimate, nondiscriminatory" reason for the adverse employment action. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If Defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts to Plaintiff to demonstrate Defendant's asserted justification is a "mere pretext for its true discriminatory motives." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1983)).

The Magistrate Judge determined that there are no issues of material fact that Plaintiff satisfies elements one and two of a *prima facie* sex discrimination case. The Magistrate Judge found there is an issue of material fact as to element three of a *prima facie* sex discrimination claim and whether not assigning BOBs to Plaintiff was an adverse employment action. (Dkt. No. 30 at 12-13). Neither party objects to the Magistrate Judge's findings as to elements one, two, and three.

4

(Dkt. No. 31 at 10; Dkt. No. 32). The issue in this case is whether Plaintiff sets forth sufficient evidence to establish the fourth element of a *prima facie* sex discrimination claim, that she was treated differently than similarly situated employees outside of her protected class. The Magistrate Judge determined that Plaintiff fails to present sufficient evidence to establish element four. Plaintiff objects to the R & R as to this finding. (Dkt. No. 30 at 13).

Title VII requires compared jobs to be "similar". *Spencer v. Virginia State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)). While there is no bight-line rule for what makes two jobs "similar" under Title VII, courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, (iv) had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision." *Id.* The plaintiff must provide evidence that "the proposed comparators are not just similar in some respects, but similarly-situated in all respects." *Spencer*, 919 F.3d at 207; *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) ("[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").

The Magistrate Judge explained that although Plaintiff does not name specific comparators in her response motion, Plaintiff names Christopher Cook, Morgan Herterich, Griffin Wise, Clint Richey, and Isaac Matthews as comparators in her interrogatory responses. (Dkt. No. 30 at 13-14) (citing Dkt. No. 21-2 at ¶ 2)). The Magistrate Judge found that Plaintiff pointed to no evidence to show that Richey was ever assigned BOBs and therefore failed to establish that Richey is a

similarly situated comparator. (Dkt. No. 30 at 14). The Magistrate Judge found that the record contained evidence that Cook, Herterich, Matthews, and Wise were all assigned BOBs. (*Id.*). Cook, Herterich, and Matthews were Commercial Producers and Wise was a Sales Lead. The Magistrate Judge conducted a comparator analysis to Cook, Herterich, Matthews, and Wise. (*Id.*).

In this case, Plaintiff was hired by Defendants as a Community Accounts Leader, Personal Lines Producer. (Dkt. No. 21-2 at 123). This was a hybrid role that involved new business sales and customer service management oversight. (*Id.*). The record reflects that between August 2017 and onward, Tyler and Plaintiff discussed Plaintiff's future roles with the company and whether she wanted to stay in her hybrid management role or pursue a production path as a full-time Commercial Producer. (Dkt. No. 21-2 at 51-53, 106-113, 124-125). Plaintiff declined the opportunity to become a Commercial Producer and preferred to stay in her hybrid management role. (Dkt. No. 22-3 at 113-123). Plaintiff testified that the goal in a Commercial Producer role was to be 100 % commission. (*Id.* at 118-119). Plaintiff was not comfortable going straight to a commission role as a Commercial Producer and wrote that she was "not that much of a risk taker." (Dkt. No. 21-2 at 112). In February 2018, Plaintiff proposed that she become the Personal Lines/Small Business Leader for all offices in South Carolina and have responsibility for both offices with:

> "retention, growth, compliance with Audit, carrier issues/adding new companies, monthly reports, customer contact when claims or coverage is an issue, resources for coverage questions/carrier questions make sure all employees are getting additional education and possible designations to become more skilled for the agency's benefit . . ."

(*Id*. at 112). Tyler accepted Plaintiff's proposal and increased her compensation. The changes were effective on April 19, 2018. (*Id*. at 115).

In 2018, Commercial Producers Steve Messina and Keefe Potts left the company. (Dkt. No. 22 at 16-17). Tyler transferred Messina and Potts' accounts to full-time Commercial

Producers Herterich, Cook, and Matthews. (Dkt. No. 21-6 at ¶¶ 16, 18, 20, 22). In November 2018, Plaintiff emailed Tyler and inquired why he did not assign any of Messina and Potts' accounts to her. (Dkt. No. 21-2 at 116-117). Tyler stated that he did not want to "burden [her] with extra work when [she] had so much going on with managing [her] department." (*Id*.). Tyler promised that if it happened again, he would include Plaintiff in the conversation. (*Id.*).

In May 2019, Plaintiff completed an Employee Self-Evaluation. (*Id*. at 119). She wrote she felt "burnt out" on all that she was asked to do in her hybrid management role. (*Id.*). In September 2019, Tyler asked Plaintiff if she wanted to focus on management or sales. (Dkt. No. 21-2 at 132). Plaintiff indicated she wanted to reduce her management duties in Greenville, South Carolina. (*Id.* at 71-72). Tyler and Plaintiff discussed options to reduce her management role and maintain her compensation. (*Id.* at 134-140).

In November 2019, Commercial Producer Cook resigned. (Dkt. No. 22-4 at 13). On November 12, 2019, Tyler wrote to Plaintiff and explained that with Cook leaving, Wise would take some of Cook's BOB. (Dkt. No. 21-2 at 137). Tyler sent Plaintiff career options and stated he believed Plaintiff would "do an incredible job" as a Commercial Producer. (*Id.*). Tyler gave Plaintiff the option for him to assign her some of Cook's BOB if she became a Commercial Producer. (*Id.*). Plaintiff testified that as of November 19, 2019, she desired to move into a 100% sales Commercial Producer role. (Dkt. No. 21-2 at 77). Tyler encouraged Plaintiff to meet with other Commercial Producers to see how to make a successful transition. He indicated he would like her to sit down with them and talk. To "be humble and ask them questions . . . just be vulnerable and ask them questions." (Dkt. No. 21-2 at 141). On November 22, 2019, Plaintiff sent an email to Tyler that indicated her decision to stay in her role as Community Accounts Leader. (*Id*. at 81). She testified that she was not comfortable moving forward with a 100% commission

7

role after Tyler directed her to be vulnerable and humble with male Commercial Producers and because it was apparent to her that Tyler did not believe she would be successful. (*Id*. at 80, 142).

On December 10, 2019, Plaintiff emailed Tyler asking about compensation and which accounts from Cook's BOB she would receive. (*Id*. at 145-145). Tyler responded he was unaware Plaintiff was waiting on him, that they would need to discuss a compensation plan for her, and for Plaintiff to get in touch with Keith Graham about the details of the plan. (*Id.*). Plaintiff filed a Charge of Discrimination on December 14, 2019. (*Id*. at 143).

In the objections to the R & R, Plaintiff argues that she is similarly situated to "the [Commercial] Producers who received BOBs. (Dkt. No. 31 at 11).[1] The record reflects that Plaintiff was the only person in the position of "Community Accounts Leader, Personal Lines Producer" which Plaintiff described as management with sales. (Dkt. No. 22-3 at 19-20). Commercial Producers focused on commercial account sales and did not have management responsibilities such as making hiring and firing decisions. (Dkt. No. 21-2 at 8-10; Dkt. No. 21-6 at ¶ 35). In addition, Plaintiff and Commercial Producer comparators were not subject to the same compensation structures. Plaintiff received salary plus commission as a Community Accounts Leader and Commercial Producers were primarily paid commission. (Dkt. No. 21-6 at ¶ 18; Dkt. No. 22-4 at 14-16; Dkt. No.22-4 at 17-18). Last, Plaintiff did not share a supervisor with the Commercial Producer comparators. Plaintiff reported to Tyler, the Profit Center Manager and

---

[1] To support this objection, Plaintiff argues she produced evidence the Magistrate Judge failed to consider. The evidence Plaintiff cites to is her Affidavit attached to her response in opposition to motion for summary judgment. (Dkt. No. 31 at 12-13 (citing Dkt. No. 22-6 at ¶¶ 9, 31(c), (f), (i) (k)). Upon a review of the cited portions of Plaintiff's Affidavit, the Court finds that the citations to the Affidavit are simply bald statements that fail to create any issue of material fact. *U.S. v. Middleton*, 2005 U.S. Dist. LEXIS 48749, at * 8 (D.S.C. 2005) (stating that "genuine issues of material fact are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.").

Executive Vice President over South Carolina. Meanwhile the Commercial Producers reported to Wise, who was the Sales Leader over the Commercial Department. (Dkt. No. 21-2 at 5-7; Dkt. No. 21-6 at ¶ 34).

Viewing the evidence in a light most favorable to Plaintiff, the Court finds there is no issue of material fact that Plaintiff has not set forth evidence to demonstrate the Commercial Producer comparators were "similarly-situated" in all respects to her. *Spencer*, 919 F.3d at 207. Plaintiff has not established the fourth element of her *prima facie* sex discrimination claim based on BOB transfers to Commercial Producers Cook, Herterich, or Matthews.

Second, the Magistrate Judge analyzed Wise as a comparator to Plaintiff. The Magistrate Judge found that although Plaintiff and Wise did not have the same job description there was sufficient evidence to create a question of fact as to whether Wise was similarly situated to Plaintiff. (Dkt. No. 30 at 15-15). For example, the Magistrate Judge determined that both Plaintiff and Wise both had management and sales duties and reported directly to Tyler. (Dkt. No. 25-1 at ¶ 2). Both Plaintiff and Wise received salary plus commissions. (Dkt. No. 22-5 at 8-10; Dkt. No. 22-3 at 111-14). The Magistrate Judge analyzed whether Wise was "treated more favorably" than Plaintiff and determined that Plaintiff failed to establish this. (Dkt. No. 30 at 16). Plaintiff objects to the R & R as to this issue and argues that she sets forth evidence to demonstrate that Wise was treated more favorably than her. (Dkt. No. 31 at 14).[2]

---

[2] To support this objection, Plaintiff argues she produced evidence the Magistrate Judge failed to consider. The evidence Plaintiff cites to is her Affidavit attached to her response in opposition to motion for summary judgment. (Dkt. No. 31 at 14-15 (citing Dkt. No. 22-6 at ¶¶ 910, 12, 31(i), (n), (w), (x)). Upon a review of the cited portions of Plaintiff's Affidavit, the Court finds that the cited portions of the Affidavit are bald statements that fail to create any issue of material fact. *U.S. v. Middleton*, 2005 U.S. Dist. LEXIS 48749, at * 8 (D.S.C. 2005) (stating that "genuine issues of material fact are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.").

The Magistrate Judge determined that when Messina and Potts left in 2018, some of their accounts were transferred to "house accounts" or to Tyler, and some of their some of their accounts were transferred to Commercial Producers Herterich, Cook, and Matthews. (Dkt. No. 21-6 at ¶¶ 16, 18, 20, 22). The Magistrate Judge determined that Plaintiff has not set forth evidence that any of these accounts were transferred to Wise. Plaintiff does not object to this finding. (Dkt. No. 31 at 14).

As to the transfer of Cook's accounts after his resignation in 2019, Plaintiff argues that Defendants were "forced to 'change their mind'" and decided to assign part of Cook's BOB to her after she filed a Charge of Discrimination on December 14, 2019. (*Id.*). The record reflects that in November 2019 Tyler referenced that he would transfer half of Cook's accounts to Wise around the same time that he first mentioned possibly transferring some of Cook's accounts to Plaintiff if she became a Commercial Producer. (Dkt. No. 21-2 at 137). Cook's accounts were transferred sometime in January 2020 and in the interim, account managers in the Commercial Department continued to service those accounts. (Dkt. No. 21-6 at ¶ 24; Dkt. No. 22-2 at 31; Dkt. No. 22-5 at 8-10).[3] Wise testified he did not know which of Cook's accounts would be transferred to him until around January 3, 2020. (Dkt. No. 22-5 at 8-9). Similarly, Plaintiff testified that on January 3, 2020, she learned of the accounts that would be transferred to her if she were to become a Commercial Producer, including $186,000 of Cook's BOB. (Dkt. No. 22-3 at 184-186, 188). Plaintiff resigned on January 7, 2020, before any accounts were transferred to her. (Dkt. No. 22-3 at 190-191; Dkt. No. 22-2 at 17).

---

[3] Tyler testified in his deposition that "house account" means that the account is not assigned to any specific employee. (Dkt. No. 22-2 at 19).

10

Viewing the evidence in a light most favorable to Plaintiff, there is no issue of material fact that any of Cook's accounts were transferred to Wise prior to Plaintiff's resignation. There is no issue of material fact Plaintiff has failed to produce evidence establishing that Wise was assigned or transferred BOBs when Plaintiff was not, such that she has not established that Wise was treated more favorably than Plaintiff. Thus, Plaintiff has failed to establish a *prima facie* case of sex discrimination and Defendants' motion for summary judgment is granted.

### IV. Conclusion

For the reasons stated above, the Court **ADOPTS** the R & R as the Order of the Court. (Dkt. No. 30). Defendants' motion for summary judgment is **GRANTED**. (Dkt. No. 21). Plaintiff's complaint is **DISMISSED**. (Dkt. No. 1-1).

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

March 15, 2022
Charleston, South Carolina